**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD HARVEY HAWKS, | No. C 07-00366 JSW |
| | No. C 07-05039 JSW |
| Petitioner, | No. C 08-04605 JSW |
| v. | **ORDER RESOLVING PETITIONS FOR WRITS OF HABEAS CORPUS** |
| BEN CURRY, | |
| Respondent. | |

## INTRODUCTION[1]

Now before the Court for consideration are three petitions for writs of habeas corpus, filed by Petitioner Harold H. Hawks ("Hawks"), pursuant to 28 U.S.C. § 2254. The petitions are now ripe for consideration on the merits. The Court has considered the parties' papers, including supplemental briefing on the impact of *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (*en banc*), the record in each of these cases, relevant legal authority, and, for the reasons set forth herein, denies in part and denies as moot in part the petitions in cases 07-366 and 07-5039, and grants the petition in case 08-4605.

## BACKGROUND

**A.    Procedural History.**[1]

On May 4, 1987, Hawks was convicted by a jury of one count of murder in the second degree with the use of a firearm, and on June 2, 1987, he was sentenced to an indeterminate sentence of fifteen (15) years to life, with a two year enhancement as a result of the use of the

---

[1]   For the sake of brevity, the Court omits the procedural history relating to Hawks' state habeas filings in each of these three cases. It is undisputed that each of the Petitions is timely and that Hawks has exhausted his claims for relief.

firearm. The three petitions at issue here challenge Board decisions to deny Hawks parole after hearings held in 2005, 2006, and 2007, respectively. These hearings are his fifth, sixth, and seventh suitability hearings. At each of these hearings the Board found Hawks unsuitable for parole and deferred a further hearing for a period of one year.[2]

**B.    Factual Background.**

    **1.    The Offense.**

Hawks was convicted of killing Patricia Dwyer, an off-duty police officer from the city of Corona, California, and for seriously wounding her friend, Wendy Vargas. As set forth in this Court's prior orders, the facts as found by the Court of Appeals on direct review are as follows:

> On the night of August 22, 1986, the murder victim and her friend were riding in a van driven by the formers [*sic*] husband. They were on their way to Riverside on the 91 Freeway to take the couple's son, who had been injured earlier, to the hospital. Hawks, who was upset after a disagreement with his estranged wife, was driving on the same freeway with his two year old son when a ... "traffic dispute" arose between the driver of the van and Hawks. And the latter had become very upset when, as he claimed, the van cut him off, forcing him off to the median and one of it's [*sic*] occupants threw an empty soda can at his car. Hawks then reached into his back seat and retrieved his shotgun, which he loaded with a slug and then fired once. The slug pierced the side of the van, hit the victim in the chest, killing her, exiting through her body and lodging in the throat of her companion.

*See Hawks v. Hamlet*, 2006 WL 3147693, at *1; *Hawks v. Kane*, 2006 WL 3371416, at *1.

    **2.    Hawks' Fifth Suitability Hearing.**

Hawks appeared before the Board for his fifth suitability hearing on March 2, 2005. The Board reviewed the circumstances surrounding the offense and Hawks' criminal history, which it noted was "negligible." (Answer, Ex. 2 (March 2, 2005 Hearing Transcript ("3/2/05 Tr.")) at

---

[2] The undersigned previously denied two petitions filed by Hawks in which he challenged the California Board of Parole Hearing's (the "Board") decisions to deny him parole in September 2002 and November 2003. *See Hawks v. Hamlet*, No. 04-1822-JSW, 2006 WL 3147693 (N.D. Cal. Nov. 1, 2006); *Hawks v. Kane*, No. 05-2853-JSW, 2006 WL 3371416 (N.D. Cal. Nov. 21, 2006). The Board also denied Hawks parole at hearings held in 2008, 2009, and 2010, although he has not yet filed federal habeas petitions challenging those hearings, because they have not yet been exhausted in state court. (*See, e.g., Hawks v. Kane,* No. C 07-366-JSW, Docket No. 25 (Petitioner's Supplemental Brief at 3 n.2).)

2

32:14-20).)³ The Board also covered Hawks' history with substance abuse, his parole plans and the support network he has established outside of prison. (*See, e.g., id.* at 37:1-39:26, 54:13-21, 59:6-23.) The Board reviewed Hawks post-conviction history and noted that he had received "one 115 and one counseling chrono since [he has] been in prison, which is remarkable," and that he has received numerous positive reports from those who have worked with him while he has been incarcerated. The Board also reviewed Hawks' educational and vocational achievements and his continuous participation in Alcoholics Anonymous. (*Id.* at 41:2-52:22.)

The Board also reviewed Hawks' most recent psychological report, which concluded that Hawks has "no greater violence potential than the average non-offender population in the community," and that he was viewed as "below average for the typical parolee" in terms of risk of violence. (*Id.* at 55:2-56:9, 56:13-58:11.) The Board noted that there were numerous letters in support of Hawks as well as letters opposing Hawks' release on parole. Hawks also explained to the Board why he believed he would not commit another offense if released and why he believed he was suitable for parole. (*Id.* at 70:10-71:4, 91:7-94:15.) The Board gave the prosecuting attorney and members of the victims' family an opportunity to explain the impact of the crime on their lives and their reasons for opposing parole. (*Id.* at 75:15-90:1, 95:1-102:7.)

After it deliberated, the Board acknowledged Hawks' accomplishments during his incarceration but determined that he was "not yet suitable for parole and would pose an unreasonable risk of danger to society or threat to public safety if released from prison." Although it cited to Hawks "unstable social history," and opposition from the victims' next of kin and the prosecuting attorney, the Board stated that its decision was based primarily on the view that the commitment offense outweighed any of Hawks' post-incarceration accomplishments. (*Id.* at 103:5-109:22.)

//

---

[3] At this hearing, the Board relied on the probation officer's report to recount the facts underlying the offense. (3/2/05 Tr. at 21:17-19, 22:6-9.) The Board also considered Hawks' version of events as set forth in a November 2004 report to the Board. (*Id.* at 28:19-21.)

3

//

### 3. Hawks' Sixth Suitability Hearing.

Hawks next appeared before the Board on July 27, 2006. Once again the Board covered the nature and circumstances of the commitment offense.[4] (*See Hawks v. Curry*, 07-5039-JSW, Answer, Ex. 2 (July 27, 2006 Hearing Transcript ("7/27/06 Tr.") at 27:7-43:14).) The Board also reviewed Hawks' criminal and social history, including his history of substance abuse (*id.* at 43:25-54:15), his post-conviction behavior and programming (*id.* at 54:19-63:6, 90:1-92:27), his most recent psychological report (*id.* at 63:7-69:19), his parole plans and support network upon release (*id.* at 70:2-87:20, 89:1-27), his insights into the commitment offense and the impact on its victims, his reasons for believing he was suitable for parole, and his expectations about the transition from incarceration to parole status (*id.* at 93:1-97:19, 139:15-142:12).

The Board also heard from the victims' relatives about the impact of the crime on their lives and why they oppose release (*id.* at 142:21-148:8), from the prosecuting attorney, who opposed release in part on the basis that, in her view, Hawks had not yet accepted the fact that his conviction was not an "accident" (*id.* at 87:21-88:26, 109:15-121:22), and from Hawks' counsel, who noted that although Hawks was prosecuted for first degree murder, he was acquitted of all charges that required an intent to kill. (*Id.* at 123:4-138:25).

The Board acknowledged Hawks' many accomplishments, laudatory chronos, and the favorable psychological evaluation, found his parole plans to be appropriate, noted the opposition to parole, and once again determined that Hawks was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." The Board stated that "[w]e come to this conclusion based on the nature and circumstances of the commitment offense." (*See id.* at 149:9-152:18)[5]

---

[4] At this hearing, the Board read from the Court of Appeals decision, the probation officer's report, and from Hawks' version of the offense as recounted in a 2006 report to the Board.

[5] Following the denial of parole in 2003, the Board requested a further psychological report to address a number of specific issues, including Hawks' insight into his crime and the significance of alcohol or drug abuse as it related to the commitment offense. Pursuant to this directive, Dr. Sexton interviewed Hawks and determined that barring a brain

4

### 4. Hawks' Seventh Suitability Hearing.

Hawks next appeared before the Board on June 26, 2007. Once again the Board covered the nature and circumstances of the commitment offense.[6] (*See Hawks v. Curry*, 08-4605-JSW, Petition, Ex. A (June 26, 2007 Hearing Transcript ("6/26/07 Tr.") at 20:23-25:22, 27:18-31:2).) The Board also reviewed Hawks' criminal and social history, including his history of substance abuse and his relationship with his family. (*Id.* at 31:8-36:18, 46:5-59:21.) The Board - and the prosecuting attorney - also inquired into an incident that occurred in 1986 with his ex-wife, in which she accused Hawks of pointing a loaded shotgun at her during an argument. Hawks explained that his ex-wife pulled a shotgun out of a cabinet, he took it from her and called the police. Hawks also explained to the Board that although he and his ex-wife had a volatile relationship while they were married, they were now on good terms. (*Id.* at 36:19-41:18, 123:3-124:9.)

The Board then covered Hawks' post-conviction behavior and programming. (*Id.* at 60:20-68:18.) The Board also considered a psychological report dated March 16, 2007, in which Dr. Marek concluded that Hawks "violence potential is about the same as the average citizen; that is, quite low." (*Id.* at 68:19-71:14; *see also* Petition, Ex. L (2007 Psychological Evaluation at 3).) The Board also reviewed Hawks' participation and involvement with Alcoholics Anonymous and its impact on his life. (6/26/07 Tr. at 71:20-79:19.) The Board also reviewed Hawks' parole plans and support network upon release and permitted the prosecuting attorney to inquire into those plans. (*Id.* at 87:8-92:22, 94:6-116:16, 117:3-123:3.) The Board also heard from the victims' relatives about the impact of the crime on their lives and why they oppose release (*id.* at 159:12-162:23), from the prosecuting attorney, who opposed release on the basis that, in her view, Hawks continued to minimize the severity of the crime, had not yet

---

injury or pre-senile dementia, further psychological reports would be redundant and of little clinical value. In spite of Dr. Sexton's conclusion, the Board ordered a further psychological report for use at the next suitability hearing. (*See* Petition, Ex. G (2005 Psychological Evaluation at 2-3); 7/27/06 Tr. at 152:13-16.)

[6] At this hearing, and once again over Hawks' objection, the Board recounted the facts of the offense from the probation officer's report and recounted Hawks' version of events from the 2006 report prepared for the Board.

5

1  accepted the fact that the commitment offense was not an "accident," and lacked insight into the
2  reasons for his actions and his alcoholism (*id.* at 138:6-145:10), and arguments from Hawks and
3  his counsel explaining why they believed release was appropriate. (*Id.* at 145:13-159:5.)

4  After it deliberated, the Board acknowledged Hawks' many accomplishments, laudatory chronos and the favorable psychological evaluation, found his parole plans to be appropriate, noted the opposition to parole, and once again determined that Hawks was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." The Board set forth a brief summary of its view of the facts of the offense and stated that it found that the commitment offense was motivated by anger and was "one of extraordinary violence." The Presiding Commissioner also noted that, based on his experience, he did not believe it would have been possible to fire a warning shot, as Hawks' claimed to have done, and that Hawks' actions were purposeful. Finally, and most "significant" to its decision, the Board stated it believed that Hawks made an effort minimize the violence involved in the 1986 incident with his ex-wife and stated that it was left with "a sense of avoidance of some degree with regard to [Hawks'] culpability" in both that incident and the commitment offense. (*See id.* at 165:5-171:4.)

**ANALYSIS**

**A.     Standard of Review.**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Rose v. Hodges*, 423 U.S. 19, 21 (1971). Because the petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), AEPDA's provisions apply. *Jeffries v. Wood*, 103 F.3d 827 (9th Cir. 1996) (en banc).

Under AEPDA, this Court may grant the petition with respect to any claim that was adjudicated on the merits in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2)

resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Williams (Terry) v. Taylor*, 529 U.S. 362, 413 (2000) (hereinafter "*Williams*").

Under the "contrary to" clause of section 2254(d)(1), a federal court may grant the writ only if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result." *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams*, 529 U.S. at 405-06). Under the "unreasonable application" clause of section 2254(d)(1), a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412. The objectively unreasonable standard is not a clear error standard. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Clark v. Murphy*, 331 F.3d 1062, 1067-69 (9th Cir.), *cert. denied*, 540 U.S. 968 (2003). After *Lockyer*, "[t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them." *Clark*, 331 F.3d at 1068.

In determining whether the state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). If the highest state court has summarily denied a petitioner's claim, the habeas court may "look through" that decision to the last state court addressing the claim in a reasoned decision. *See Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

7

1    The standard of review under AEDPA is somewhat different where the state court gives
2 no reasoned explanation of its decision on a petitioner's federal claim and where there is no
3 reasoned lower court decision on the claim.  In such a case, a review of the record is the only
4 means of deciding whether the state court's decision was objectively reasonable.  *See Hines v.*
5 *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Greene v. Lambert*, 288 F.3d 1081, 1088 (9th
6 Cir. 2002).  Therefore, while a state court decision on the merits concerning a question of law
7 normally should be afforded respect, "[i]f there is no such decision on the merits ... there is
8 nothing to which to defer."  *Greene*, 288 F.3d at 1089.

9    In each of these three cases, Hawks' state habeas petitions and petitions for review
10 were denied without reasoned opinions.  (*See Hawks v. Kane*, No. 07-CV-366-JSW, Answer,
11 Exs. 8, 10, 14; *Hawks v. Curry*, No. 07-CV-5039-JSW, Answer, Exs. 7, 9, 11; *Hawks v. Curry*,
12 No. 08-CV-4605-JSW, Answer, Exs. 2, 5-6.)  Accordingly, the Court has conducted an
13 independent review of the record.

**B.    Analysis.**

15    Hawks' primary claim for relief in each of these cases is that the Board's decisions to
16 deny him parole are not supported by "some evidence" of current dangerousness.  However, in
17 cases 07-366 and 07-5039, Hawks raises additional grounds for relief, which the Court can
18 dispose of summarily.

19    In case 07-366, Hawks asserts that the Board denied his due process rights by relying
20 on facts found not found by the jury to deny him parole. In support of this claim, Hawks relies
21 on *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296
22 (2004).   Hawks also renews an argument that the Board had a contractual obligation to grant
23 him parole. The Court rejects the claims for reasons previously stated.  *See Hawks v. Kane,*
24 2006 WL 3147693, at *9 n.4; *Hawks v. Kane*, 2006 WL 3371416, at *5 n.5.  Hawks also
25 contends that the Executive Branch has a no parole policy, implemented by the Board.  The
26 Court concludes that Hawks has not met his burden to establish a claim for relief on this basis.

27    Finally, in cases 07-366 and 07-5039, Hawks asserts that the Board should have
28 engaged in a comparative or "like crimes" analysis to make its suitability determination.  Those

8

1  claims also must be rejected. *See In re Lawrence*, 44 Cal. 4th 1181, 1205 (2008); *In re*
2  *Dannenberg*, 34 Cal. 4th 1061, 1082 (2005).
3        Accordingly, the Court denies the petitions in cases 07-366 and 07-5039 to the extent
4  they are premised on these arguments.

    **1.**    **The "Some Evidence" Claims.**

        **a.**    **The Impact of *Hayward v. Marshall*.**

7        On April 22, 2010, the Ninth Circuit issued its *en banc* opinion in *Hayward v.*
8  *Marshall*, in which it resolved some open questions pertaining to federal habeas review of
9  challenges to parole suitability decisions. The Court requested supplemental briefing from the
10 parties on the impact of *Hayward*. In his supplemental brief, Respondent argues that *California*
11 prisoners have no liberty interest in parole, and that if they do, the only due process protections
12 available are a right to be heard and a right to be informed of the basis for the denial – that is,
13 respondent contends there is no due process right to have the result supported by some
14 evidence. These arguments are without merit. *See Pirtle v. California Bd. of Prison Terms*, 611
15 F.3d 1015, 1020-21 (9th Cir. 2010); *Cooke v. Solis*, 606 F.3d 1206, 1213-14 (9th Cir. 2010)
16 (citing *Hayward*, 603 F.3d at 555, 561-64); *Pearson v. Muntz*, 606 F.3d 606, 610-11 (9th Cir.
17 2010) (citing *Hayward*, 603 F.3d at 561-64).
18       In *Hayward*, the Ninth Circuit held that there is no constitutional right to "release on
19 parole, or to release in the absence of some evidence of future dangerousness," arising directly
20 from the Due Process Clause of the federal constitution. Instead, any such right "has to arise
21 from substantive state law creating a right to release." *Hayward*, 603 F.3d at 555; *see also id.* at
22 561. The *Hayward* court overruled *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), *Sass v.*
23 *California Bd. of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006), and *Irons v. Carey*, 505 F.3d
24 846 (9th Cir. 2007), to the extent those cases might be read to imply a contrary rule. *Id.* at 555,
25 563; *see also Pearson*, 606 F.3d at 610 n.3. All three of those cases discussed the "some
26 evidence" requirement, but in all three it was clear that the requirement stemmed from a liberty
27 interest created by state law. Thus, those aspects of *Biggs*, *Sass*, and *Irons* were not overruled
28 by *Hayward*. *See Biggs*, 334 F.3d at 914-15; *Sass*, 461 F.3d at 1127-19; *Irons*, 505 F.3d at 850-

9

51; *see also Cooke,* 606 F.3d at 1213-14 (noting that California law gives rise to a liberty interest in parole).

In sum, the Ninth Circuit recognizes that California law gives rise to a liberty interest in parole. *Pirtle*, 611 F.3d at 1020; *Cooke,* 606 F.3d at 1213-14; *Pearson,* 606 F.3d at 610-11. Under California law, "some evidence" of current dangerousness is required in order to deny parole. *Pirtle*, 611 F.3d at 1020; *Hayward*, 603 F.3d at 562 (citing *In re Lawrence*, 44 Cal.4th 1181, 1205-06 (2008), and *In re Shaputis*, 44 Cal.4th 1241 (2008)). "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state." *Cooke*, 606 F.3d at 1213. Accordingly, as explained in *Hayward*, the Court reviews Hawks' "some evidence" claims to determine "whether the California judicial decision" approving the Board's decision to deny parole "was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-(2)); *see also Cooke*, 606 F.3d at 1213; *Pearson*, 606 F.3d at 608.

### b. The Board's Decision to Deny Hawks Parole in 2007 Was Not Supported by Some Evidence of Current Dangerousness.

The Court concludes that the Board's decision to deny Hawks parole in 2007 was not supported by some evidence of current dangerousness.[7] The Board based its decision, in part, on its "sense" that Hawks was avoiding his culpability in the commitment offense and in the uncharged incident with his ex-wife. The Board specifically advised Hawks that "we would like to see some work done on his part to go to" that issue. (6/26/07 Tr. at 169:5-17.) These are factors that the Board can properly consider. *See Lawrence*, 44 Cal. 4th at 1214; *Shaputis*, 44 Cal. 4th at 1246. The Court concludes, however, that the facts in the record contradict the Board's findings on this point.

---

[7] In light of this ruling, the Court denies as moot Hawks' petitions in cases 07-366 and 07-5039, to the extent those petitions are premised upon the argument that the Board's decisions to deny parole in 2005 and 2006 were not supported by some evidence of current dangerousness.

10

1    For example, throughout the 2007 hearing, Hawks took responsibility for his actions on
2 the night of the commitment offense and expressed his remorse to both the Board and the
3 victims' families. (6/26/07 Tr. at 59:17-22, 81:15-83:23, 85:7-86:13, 129:9-131:2, 131:19-23,
4 156:6-157:7, 157:18-23, ). In addition, Hawks has sent letters of apology to the victims'
5 families, the City of Corona, and Corona's Chief of Police. (Petition, Ex. M.) Moreover, Dr.
6 Marek opined that "Hawks continues to express remorse and regret for his crime and takes full
7 responsibility." (2007 Psychological Evaluation at 2.)

8    In addition, in 2005 Dr. Sexton noted that although previous clinicians had not
9 recommended that Hawks attend self-help groups or programs, Hawks took the initiative to
10 participate in 14 such programs. Dr. Sexton explained that "[w]ith the greater awareness that ...
11 Hawks has obtained through the above programs, he has written letters of apology to the
12 victims and the victims' families. He has participated in a magazine article, which should be
13 read in its entirety by the Board to better understand this inmate's complete understanding of
14 the crime he committed [and] the pain it has caused other people..." (2005 Psychological
15 Evaluation at 3-4.) These assessments are fully consistent with an evaluation prepared in 2000,
16 in which Dr. Reed stated that Hawks "showed excellent insight into his poor anger control
17 problem and alcohol abuse problem. He showed excellent empathy towards the damage done to
18 the victims and seemed genuinely penitent for his crime." (Petition, Ex. L (2000 Psychological
19 Evaluation at 4).)[8]

20    The Board also based its decision on the nature and circumstances of the commitment
21 offense. (6/26/07 Tr. at 165:5-168:6.) Although it was proper for the Board to do so, the
22 "aggravated nature of the crime does not in and of itself provide some evidence of *current*
23 dangerousness to the public unless the record also establishes that something in the prisoner's
24 pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that
25 the implications regarding the prisoner's dangerousness that derive from his or her commission

---

[8] In addition, a correctional officer, who has experience as a parole agent and who has interacted with Hawks frequently, also noted his opinion that Hawks has a deep sense of remorse regarding the offense. (Petition, Ex. H at 8 (Laudatory Chrono dated 8/26/2006 from R. Schramm).)

11

1  of the commitment offense remain probative to the statutory determination of a continuing
2  threat to public safety." *Lawrence*, 44 Cal. 4th at 1214 (emphasis in original); *see also*
3  *Shaputis*, 44 Cal. 4th at 1254-55; *Cooke* 606 F.3d at 1214. As set forth above, the Board's
4  findings regarding Hawks' insight and remorse are not supported by the record.

5        The Board also relied on the uncharged incident with Hawks' ex-wife. The facts
6  underlying that incident, like the facts underlying the commitment offense, will never change.
7  Further, as Hawks explained to the Board, at the time of the commitment offense and at the time
8  of the 1986 incident with his ex-wife, he was abusing alcohol. At the time of the 2007 hearing,
9  however, Hawks had been participating in Alcoholics Anonymous since 1990. Indeed, the
10 record demonstrates that Hawks' decision to remain sober is due to personal choice and that he
11 is not likely to relapse if he is paroled. (*See* Petition, Ex. L (2007 Psychological Evaluation at
12 3; 2005 Psychological Evaluation at 1-2).) Thus, both the commitment offense and the 1986
13 incident with Hawks' ex-wife are "temporally remote and mitigated by circumstances indicating
14 that [such] conduct is unlikely to recur." *Lawrence*, 44 Cal. 4th at 1191. Further, Hawks
15 advised the Board that he now has a good relationship with his ex-wife. The Board did not cite
16 to any evidence that would contradict Hawks on this point.

17       At the time of the 2007 hearing, Hawks had served 20 years in custody, three years
18 beyond the base term of 17 years to which he was sentenced. That circumstance also
19 undermines reliance on the commitment offense to deny parole given the undisputed evidence
20 of Hawks' numerous educational and self-help achievements and his exemplary conduct while
21 incarcerated. *See id.* at 1211 ("[A]fter these prisoners have served their suggested base terms,
22 the underlying circumstances of the offense alone rarely will provide a valid basis for denying
23 parole when there is strong evidence of rehabilitation and no other evidence of current
24 dangerousness.")

25       Accordingly, the Court concludes that state courts' application of the some evidence
26 standard was an unreasonable determination of the facts in light of the evidence before the
27 Board. Therefore, Hawks is entitled to relief on this claim, and his petition in case 08-4605 is
28 GRANTED.

## CONCLUSION

For the foregoing reasons, the Petitions in cases 07-366 and 07-5039 are denied, in part, and denied as moot, in part.[9] The Petition in case 08-4605 is GRANTED. As noted, the Board has denied Hawks parole at three subsequent hearings since the 2007 hearing. Accordingly, within twenty-one (21) days of the date of this Order, the California Board of Parole Hearings must calculate a term for Hawks and set an imminent date for his release in accordance with Section 3041(a) of the California Penal Code. Within ten (10) days of Hawks' release, Respondent must file a notice with the Court confirming the date on which Hawks was released.

The Court shall enter separate judgments in each of these cases, and the Clerk is directed to close the files.

**IT IS SO ORDERED.**

Dated: September 22, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[9] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court now must rule on whether a petitioner is entitled to a certificate of appealability in the same order in which a petition is denied. Although the Court did not reach the merits of the some evidence claim in cases 07-366 and 07-5039, the Court does find that Hawks made a substantial showing that those claims amounted to a denial of his constitutional rights and demonstrated that a reasonable jurist would find the denial of those claims debatable or wrong. Accordingly, if Hawks has reason to appeal those claims, the Court grants certificates of appealability *solely* on the issue of whether the Board's decision to deny parole was supported by some evidence of current dangerousness.

13